346 So.2d 931 (1977)
John A. UNZICKER et al.
v.
STATE of Alabama et al.
SC 1945.
Supreme Court of Alabama.
May 6, 1977.
Rehearing Denied June 24, 1977.
James W. Tarlton, III, and Raymond A. Corcoran, Mobile, for appellants.
William J. Baxley, Atty. Gen., and Lucian L. Smith, Jr., and Robert A. Macrory, Asst. Attys. Gen., for appellees George C. Wallace, *932 Governor of Ala., and the Ala. Dept. of Conservation and Natural Resources.
EMBRY, Justice.
This appeal is primarily concerned with whether or not the action is one against the State and therefore prohibited by Article 1, § 14, Constitution of 1901. We hold it is not prohibited as to other defendants than the State and reverse the trial court for granting motions to dismiss of those other defendants.
Under threat of condemnation, Alice Unzicker, a 79 year-old widow, entered negotiations with the State of Alabama through its Highway Department, to convey a right-of-way across property she owned in fee simple located in Mobile County. The written agreement, to deed a right-of-way, signed by Mrs. Unzicker, in 1964, provided in pertinent part:
"1. That a certain tract of land known as Tract Number 63, a description of which is attached hereto and made a part hereof, shall be deeded by the party of the second part to the party of the first part for the purpose of construction of a public road.
"2. The party of the first part shall pay to the party of the second part the sum of $13,055.00 Dollars upon the proper execution and delivery of a deed granting right-of-way over and across said tract free of all encumbrances, except as indicated in Paragraph 3 and/or 4 hereof." (emphasis supplied).
Subsequently, in the same year, Mrs. Unzicker executed a deed supplied by the State, through its Highway Department, conveying a fee simple interest in Tract 63. The State paid the grantor $13,055, requested the tract be stricken from the condemnation proceedings and it was. Mrs. Unzicker died in 1967, leaving a will in which she devised all her real property to two of the plaintiffs in this case, John A. Unzicker and William L. Unzicker, Jr. In 1971, William Unzicker, Jr., conveyed, by deed, a 1/6th interest each in this property to William Unzicker, III, Patricia Unzicker, and Jane and David Boyd. The four last-named persons are also plaintiffs to this action. In 1972, the State of Alabama, through its Commissioner of Conservation, Claude Kelley, executed an oil, gas and mineral lease on the property to C. Barry Greer who later assigned the lease to Getty Oil Company.
The Unzickers filed their action seeking a declaratory judgment to the effect that: the deed from Alice Unzicker to the State be construed to reflect that the State acquired only a right-of-way or easement; that plaintiffs are the fee simple owners of all the oil, gas and minerals in said property; that Tit. 19, §§ 1, et seq., Code, be construed so as to permit the State of Alabama in the exercise of eminent domain to acquire only so much of an estate as may be reasonably necessary; and the same statute is unconstitutional insofar as it permits the acquisition of a fee simple title.
The action was filed against the State of Alabama, Getty Oil Company, Claude Kelley as Commissioner of Conservation, George C. Wallace as Governor, and Ray Bass as State Highway Director. All defendants filed motions to dismiss, all were granted, either initially or on motions to reconsider. No evidence was heard by the court. Plaintiffs appeal.
There are five questions to be dealt with on this appeal: 1. Is the action against the State and therefore prohibited by § 14, Art. 1, Const, of 1901? 2. May the State condemn or purchase, in fee, real property for road purposes? 3. Under the allegations of their complaint, are plaintiffs entitled to attempt proof of fraud practiced upon their predecessor in title? 4. Do the pleadings show that plaintiffs have no standing to maintain the action? 5. Do the pleadings show the action is barred by the statute of limitations or by application of the doctrine of laches?
Two, three, four and five present genuine issues of material facts raised by the pleadings, that can be resolved only by trial of those issues and cannot be disposed of on motions to dismiss. Bowling v. Pow, 293 Ala. 178, 301 So.2d 55 (1974). That being true, and since the action against *933 other parties than the State is not one against the State, there are no valid grounds to support the trial court's dismissal of the complaint; therefore we reverse.
Article 1, § 14, Constitution of Alabama of 1901 states:
"That the State of Alabama shall never be made a defendant in any court of law or equity."
As a general proposition, an action involving property in which the State has a definite right or interest and in which a decree rendered would bind the State, is one against the State and cannot be maintained without its consent. Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971); Southall v. Stricos Corporation, 275 Ala. 156, 153 So.2d 234 (1963). To the extent that the State of Alabama is impleaded as a defendant in this action, the action is prohibited by the Constitution. But, in a proper case, this same immunity will not extend to the officers of the State acting in their representative capacities.
In their complaint plaintiffs state:
"This is an action arising under the Declaratory Judgments Act, Code of Alabama, Title 7, Sections 156, et seq. to determine the rights of the parties as set forth hereinafter.
* * * * * *
"Plaintiffs aver * * * that the acquisition of said [Mrs. Unzicker's] property by the State of Alabama was pursuant to the right of eminent domain set forth in Code of Alabama, Title 19 * * * that the acquisition of a fee simple title exceeded the authority granted the State of Alabama for the acquisition of rights of way * * * that if the State of Alabama were permitted to acquire a fee simple title * * * such action would constitute a fraud on the grantor in said deed * * *"
With respect to the oil, gas and mineral lease executed by Claude Kelley, as Commissioner of Conservation, and approved by Honorable George C. Wallace, as Governor, plaintiffs alleged their acts "* * * constituted an illegal assertion * * * of a purported claim by them on behalf of the State * * *. The acts of the Defendants were beyond the scope of their authority and under a mistaken interpretation of law governing eminent domain * * * and constituted acts not within their authority and which were injurious to the rights of others." They further contend the Eminent Domain Statute was unconstitutionally applied so as to amount to a taking of property without due process of law.
While the State itself may not be made a party to such action, it does not necessarily follow that its officers, Ray Bass, Claude Kelley and Governor Wallace, in their respective capacities, are also immune. The essence of plaintiffs' complaint is that these officers of the State acted fraudulently, in bad faith, beyond their authority, or acted under a mistaken interpretation of the law. Such allegations bring this case within those not protected by Section 14 of the Constitution. Wallace v. Board of Education of Montgomery Co., 280 Ala. 635, 197 So.2d 428 (1967); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962); Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930).
Defendant Getty Oil Company's motion to dismiss was among those granted. As this is an action for declaratory judgment to determine the rights of parties under a deed to the land on which the lease was executed, and to declare that lease void, then Getty Oil Company, as assignee of the lease, possesses a material interest in the subject matter of the suit sufficient to make Getty Oil a proper party to the action. Tit. 7, § 166, Code of Ala. (1940).
Motion to dismiss the State of Alabama as party defendant was properly granted. Motions to dismiss the other defendants were improperly granted.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES and BEATTY, JJ., concur.
JONES, J., dissents.
*934 JONES, Justice (Dissenting):
I respectfully dissent.
The State of Alabama should not be dismissed as a defendant. I agree with the majority opinion that Art. 1, § 14, of our Constitution prohibits the naming of the State as a defendant in a law suit. This section, however, if applied in the instant case, will result in a direct conflict with both §§ 13 and 23 of Art. 1, Constitution of Alabama.
§ 23 provides that the State's right of eminent domain shall not abridged, but private property shall not be taken without just compensation. To follow the majority's rationale would allow the State to enlargen, and abuse, its inherent power of condemnation without fear of legal recourse. Indeed, if the allegations of the plaintiff stated in the complaint are taken as true, that is what happened here.
Because this is an appeal from a motion to dismiss (Rule 12(b)(6)), we are required to treat the allegations of the complaint as true; and, if true, the State has not only broadened beyond constitutional limits its power of eminent domain, but it has also violated the due process of law requirement as set out in Art. 1, § 13. This fundamental concept of our law states:
"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
It is plaintiffs' contention that their predecessor in title, Mrs. Unzicker, conveyed this property to the State under threat of condemnation. The State's constitutional right to take the property was limited to that interest necessary for a public highway or right of way. This was no arm's length sale. Had title passed through the condemnation proceeding, the State could not have acquired title to any interest beyond that necessary and incident to the public taking. Thus, contend the plaintiffs, the State's enlargement of this interest (that is, a fee simple title to include oil and mineral rights) was acquired through the wrongful or mistaken conduct of agents of the State.
If these allegations are true, and they must be so considered for the purpose of this review, either the State of Alabama is subject to being made a party defendant or all of the appellees (the State and its agents) are entitled to be dismissed. And this for the reason as stated in Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963):
"Section 14 of the Constitution provides that the State shall never be made a defendant in any court of law or equity. The State cannot consent to such a suit. Section 14 not only prevents a suit against the State, but against its officers and agents in their official capacity, when a result favorable to the plaintiff or complainant would directly affect a [contrary] or property right of the State."
Mr. Justice Merrill, speaking for the Court in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), relied on Southall in dismissing a suit against various agents of the State. There, he outlined four general categories of actions that do not come within the prohibition of § 14:
"(1) Actions brought to compel State officials to perform their legal duties . . (2) Actions brought to enjoin State officials from enforcing an unconstitutional law . . . (3) Actions to compel State officials to perform ministerial acts . . . (4) Actions brought under the Declaratory Judgments Act, Tit. 7, § 156 et seq., Code 1940, seeking construction of a statute and how it should be applied in a given situation. . . ."
The dilemma is obvious. § 14 of the State Constitution prohibits making the State a party and our case law applies this prohibition, except in four general categories of actions, to State officials. Literally construed, then, these plaintiffs cannot proceed against either the State or state officials because a result favorable to the plaintiffs would directly affect a property right of the State.
The majority opinion would allow the suit to proceed only against the individual defendants *935 on the precedent of Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962). The Jenkins' Court upheld the right of a property owner to enjoin the State Highway Director from the taking of private property without payment of compensation, stating: ". . . no sort of rationale can bring the case within the ban of § 14 of our constitution, prohibiting suits against the State or its agencies." The State was not made a party in Jenkins, only Englehardt, as Highway Director.
On their face, then, Aland and Jenkins are incongruous. But they need not be so construed. The exceptions set out in Aland are exceptions to the general rule that where the State cannot be made a party, neither can its officers or agencies if the result is to affect a property right of the State. If the situation posed in Jenkins comes within this rule and the exceptions are not applicable (clearly the case because title to property claimed by the State was the subject matter of the suit), the holding in Jenkins is incompatible with Aland. But this presupposes that Jenkins fits the rule. We need not concern ourselves with the exceptions to the rule unless the case falls within the scope of the rule in the first instance, and Jenkins does not so fall.
There are two rationales, equally persuasive, for exempting condemnation claims from the immunity umbrella of § 14, Alabama Constitution.
(1) The first may be called the "accommodation" theory. Where two constitutional rights are invoked which conflict, one must of necessity give way to the other. The choice is simple. Under our form of government, the power of the State must accede to the constitutional guarantee of individual citizens, the very source of governmental power. While our State Constitution is apparently ample to insure the property owner an adequate remedy against the State for abuse of the power of eminent domain, we could not escape the same conclusion under the "due process" clause of the Fourteenth Amendment of the United States Constitution.
That the power of the sovereign (or authorized private persons or corporations) to take private property is awesome and greatly subject to abuse was recognized early in both Federal and State cases.
The United States Supreme Court in United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882), stated:
"The citizen here knows no person, however near to those in power, or however powerful himself, to whom he need yield the rights which the law secures to him when it is well administered. When he, in one of the courts of competent jurisdiction, has established his right to property, there is no reason why deference to any person, natural or artificial, not even the United States, should prevent him from using the means which the law gives him for the protection and enforcement of that right.
"* * *
"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest are creatures of the law, and are bound to obey it.
"* * *
"Shall it be said, in the face of all this, and of the acknowledged right of the judiciary to decide in proper cases, statutes which have been passed by both branches of Congress and approved by the President to be unconstitutional, that the courts cannot give a remedy when the citizen has been deprived of his property by force, his estate seized and converted to the use of the government without lawful authority, without process of law, and without compensation, because the President has ordered it and his officers are in possession?
"If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights."
*936 This Court in East and West Railroad Company of Alabama v. East Tennessee, Virginia & Georgia Railroad Company, 75 Ala. 275 (1882), observed:
"The owner of the land has the right to say that, unless they keep within the strict limits prescribed by law, they shall not disturb him in the possession and enjoyment of his property. The power is so capable of abuse and those who are invested with it are often so prone to its arbitrary and oppressive exercise, that a court of equity, without inquiring whether there is irreparable injury, or injury not susceptible of adequate redress by legal remedies, will intervene for the protection of the owner."
As stated in Birmingham Traction Co. v. Birmingham Railway and Electric Co., 119 Ala. 129, 24 So. 368 (1898):
"Whenever any person, corporation or authority vested with the power of eminent domain, undertakes to exercise such power, by appropriating private property to its own use or benefit, without first complying with the constitution, a court of equity has jurisdiction to enjoin such undertaking, until compensation has been first paid to the owner . . . ."
Witness further the following language from the early case of Smith v. Inge, 80 Ala. 283 (1885):
"The State . . . in the exercise of its right of eminent domain, could not constitutionally condemn private property to such uses, without a regular judgment of condemnation, in a proper judicial proceeding, first making payment of just compensation to the owner. Such is now, and has always been the express or implied requirement of our Constitution."
Rationally, there is a second basis for excepting the State from § 14 in claims arising out of the State's exercise of its right of condemnation. This rationale partakes of certain common elements of the doctrine of estoppel. The State cannot, on the one hand, proceed to take private property as that right is constitutionally proscribed; and, on the other hand, invoke another constitutional provision to avoid liability for its violation of the very proscription imposed in the exercise of its right to take the property. In other words, having invoked one constitutional right  the right to take private property  the State cannot now invoke another constitutional right to avoid a remedy for its abuse in the exercise of the first right.
These two lines of reasoning  though considered separately for conceptual purposes, merge into, and proceed from, a single premise: Constitutionally guaranteed rights are viable and meaningful only where the law provides an adequate remedy for their enforcement. In the case at bar, the constitutional right in issue would be rendered a shambles if the suit cannot be maintained against the State and its agencies.